**IN THE UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF TENNESSEE**

In re

STEVEN ERIC MEADOR
d/b/a ACCURATE CONCRETE CONSTRUCTION
DEBBIE ANN MEADOR

        Debtors

Case No. 05-35414

FAMILY HOME CONSTRUCTION, INC.

        Plaintiff

v.

STEVEN ERIC MEADOR

        Defendant

Adv. Proc. No. 06-3034

**MEMORANDUM ON PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**

**APPEARANCES**:    JENKINS & JENKINS ATTYS., PLLC
    Edward J. Shultz, Esq.
    2121 First Tennessee Plaza
    800 South Gay Street
    Knoxville, Tennessee  37929-2121
    Attorneys for Plaintiff

    AULT, WEBBER, BRASFIELD & LOOPER
    Charles T. Webber, Jr., Esq.
    800 South Gay Street
    Suite 1832
    Knoxville, Tennessee  37919
    Attorney for Defendant/Debtor

**RICHARD STAIR, JR.
UNITED STATES BANKRUPTCY JUDGE**

This adversary proceeding is before the court upon the Complaint filed by the Plaintiff on January 26, 2006, asking the court to award it a judgment against the Defendant/Debtor in the amount of $17,769.00, plus pre-judgment and post-judgment interest, and attorneys' fees, and to determine that the judgment is nondischargeable under 11 U.S.C. § 523(a)(2)(A), (4), and/or (6) (2005).  The Debtor filed an Answer on March 7, 2006, denying the Plaintiff's allegations of fraud and misrepresentation and arguing that he is entitled to a discharge of the debt owed to the Plaintiff.

Presently before the court is the Plaintiff's Motion for Summary Judgment (Motion for Summary Judgment) filed by the Plaintiff on August 1, 2006, arguing that no genuine issues of material fact exist and that it is entitled to a judgment as a matter of law.  Accompanying the Motion for Summary Judgment are the Plaintiff's Statement of Undisputed Facts and the Plaintiff's Brief in Support of Motion for Summary Judgment.  The Plaintiff also relies upon the Affidavit of Robin A. Minnis, an attorney representing the Plaintiff in a lawsuit against the Debtor in the Circuit Court for the Fifteenth Judicial Circuit in Ogle County, Illinois.

On September 1, 2006, the Debtor filed the Defendant's Answer to Plaintiff's Motion for Summary Judgment (Response) arguing that the Plaintiff is not entitled to summary judgment based upon the facts and applicable law.

This is a core proceeding.  28 U.S.C.A. § 157(b)(2)(I) (West 2006).

# I

The following facts are not in dispute. On February 2, 2005, the Plaintiff filed a lawsuit against the Debtor and his company, Accurate Concrete Construction, Inc. (Accurate Concrete), in the Circuit Court for the Fifteenth Judicial Circuit, County of Ogle, Illinois, alleging breach of contract and fraud based upon the Debtor's statements in lien waivers on a construction contract (State Court Lawsuit). MINNIS AFF. AT ¶ 2; EX. A. The Debtor entered an appearance in the State Court Lawsuit through his attorney and requested additional time to file an answer, which was granted by the court. MINNIS AFF. AT ¶ 3; EX. A. The Debtor did not, however, file an answer in the State Court Lawsuit. MINNIS AFF. AT ¶ 2. Thereafter, a status hearing was held on August 17, 2005, at which time the Debtor's attorney represented that the Debtor was not going to defend the action and agreed to a judgment in the amount of $18,969.21 plus attorney's fees of $1,358.00, with respect to Accurate Concrete, but that the Debtor, individually, objected to entry of an order finding that he committed fraud. MINNIS AFF. AT ¶ 4; EX. B. Nevertheless, the judge held from the bench that the Debtor's failure to file an answer constituted an admission, and she was required to enter judgment on both the breach of contract and fraud counts against the Debtor. MINNIS AFF. AT ¶ 4; EX. B.

On September 23, 2005, the Debtor filed the Voluntary Petition commencing his Chapter 7 bankruptcy case. At that time, the judgment rendered from the bench in the State Court Lawsuit had not been memorialized in writing or entered by the court. MINNIS AFF. AT ¶ 5. After the Debtor filed his bankruptcy case, the Plaintiff obtained relief from the automatic stay to have the judgment entered. MINNIS AFF. AT ¶ 5. On June 15, 2006, the state court judge entered a Nunc Pro Tunct [sic] Judgment Order (Judgment), memorializing the following findings:

> THIS MATTER coming before the Court for status on the Plaintiff's Two-Count Complaint filed on February 2, 2005, and Plaintiff being present with Attorney Rachel Minnis, Defendants being present by Attorney Thomas Meyer, and the Court's finding that the Defendant has never filed an Answer or responsive pleading to the Complaint and the Defendants stipulating to the same, therefore, the Court finds that the facts as alleged in the Complaint shall be taken as true and the Court grants the entry of Judgment on both counts over the objection of the Defendant.

MINNIS AFF. AT ¶ 1; EX. C.  The Judgment was entered nunc pro tunc to August 17, 2005.

In its Motion for Summary Judgment, the Plaintiff argues that there are no genuine issues of material fact and that, under the requirements of the statute and the doctrine of collateral estoppel, the Judgment is nondischargeable under § 523(a)(2)(A).

## II

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c) (applicable in adversary proceedings by virtue of Rule 7056 of the Federal Rules of Bankruptcy Procedure).  When considering a motion for summary judgment, the court does not weigh the evidence to determine the truth of the matter asserted, but simply determines whether a genuine issue for trial exists. *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2510 (1986).

The party seeking summary judgment bears the initial burden of proving that there are no genuine issues of material fact, thus entitling it to judgment as a matter of law. *Owens Corning v. Nat'l Union Fire Ins. Co.*, 257 F.3d 484, 491 (6th Cir. 2001).  The burden then shifts to the non-moving party to produce specific facts showing a genuine issue for trial, *Matsushita Elec. Indus. Co.,*

*Ltd. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986), by citing specific evidence and not merely relying upon allegations contained in the pleadings. *Harris v. Gen. Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). The facts and all resulting inferences are viewed in a light most favorable to the non-moving party, *Matsushita*, 106 S. Ct. at 1356, and the court will decide whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 106 S. Ct. at 2512. "[O]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 106 S. Ct. at 2510.

Based upon the facts and record presented in the Motion for Summary Judgment, the Response, the Statement of Undisputed Material Facts, and the Affidavit of Ms. Minnis along with the exhibits thereto, the court finds that there are genuine issues of material fact, and that the Plaintiff is not, therefore, entitled to judgment as a matter of law.

### III

Nondischargeability of debts is governed by 11 U.S.C.A. § 523, which provides, in material part:

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—
>
> . . . .
>
> > (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]

11 U.S.C.A. § 523(a)(2)(A). As the party seeking a determination of nondischargeability, the Plaintiff bears the burden of proving the necessary elements by a preponderance of the evidence. *Grogan v. Garner*, 111 S. Ct. 654, 661 (1991). Furthermore, § 523(a) is strictly construed against the Plaintiff but liberally in favor of the Debtor. *Rembert v. AT&T Universal Card Servs., Inc. (In re Rembert)*, 141 F.3d 277, 281 (6th Cir. 1998); *Haney v. Copeland (In re Copeland)*, 291 B.R. 740, 759 (Bankr. E.D. Tenn. 2003).

To satisfy § 523(a)(2)(A), the Plaintiff must prove that the Debtor obtained money, property, or services through material misrepresentations that he knew were false or that he made with gross recklessness, that the Debtor intended to deceive the Plaintiff, that the Plaintiff justifiably relied on the Debtor's false representations, and that the Plaintiff's reliance was the proximate cause of its losses. *See Copeland*, 291 B.R. at 760 (citing *Rembert*, 141 F.3d at 280).

First, the Plaintiff must prove that the Debtor engaged in conduct that was somewhat "blameworthy," and his fraudulent intent may be "inferred as a matter of fact" based on the totality of the circumstances. *Copeland*, 291 B.R. at 759 (citing *Commercial Bank & Trust Co. v. McCoy (In re McCoy)*, 269 B.R. 193, 198 (Bankr. W.D. Tenn. 2001)). Material misrepresentations, omissions, and actual fraud fall within the scope of § 523(a)(2)(A). *Copeland*, 291 B.R. at 759; *see also Mellon Bank, N.A. v. Vitanovich (In re Vitanovich)*, 259 B.R. 873, 877 (B.A.P. 6th Cir. 2001) ("Actual fraud as used in 11 U.S.C. § 523(a)(2)(A) is not limited to misrepresentations and misleading omissions.").

> "[F]alse pretense" involves implied misrepresentation or conduct intended to create and foster a false impression, as distinguished from a "false representation" which is an express misrepresentation[, while a]ctual fraud "consists of any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another - something said, done or omitted with the design of perpetrating what is known to be a cheat or deception."

*Copeland*, 291 B.R. at 760 (quoting *Ozburn v. Moore (In re Moore)*, 277 B.R. 141, 148 (Bankr. M.D. Ga. 2002), and *First Centennial Title Co. v. Bailey (In re Bailey)*, 216 B.R. 619, 621 (Bankr. S.D. Ohio 1997)); *see also Peoples Sec. Fin. Co., Inc. v. Todd (In re Todd)*, 34 B.R. 633, 635 (Bankr. W.D. Ky. 1983) ("For the purposes of § 523(a)(2)(A), 'false representations and pretenses encompass statements that falsely purport to depict current or past facts.'").

On the other hand,

> a broken promise to repay a debt, without more, will not sustain a cause of action under § 523(a)(2)(A). Instead, central to the concept of fraud is the existence of scienter which, for the purposes of § 523(a)(2)(A), requires that it be shown that at the time the debt was incurred, there existed no intent on the part of the debtor to repay the obligation.

*EDM Mach. Sales, Inc. v. Harrison (In re Harrison)*, 301 B.R. 849, 854 (Bankr. N.D. Ohio 2003) (citations omitted). Intent to deceive requires proof that the Debtor made false representations that he knew or should have known would convince the Plaintiff to provide property or services. *Copeland*, 291 B.R. at 765-66. "'Fraudulent intent requires an actual intent to mislead, which is more than mere negligence. . . . A "dumb but honest" [debtor] does not satisfy the test.'" *Copeland*, 291 B.R. at 766 (quoting *Palmacci v. Umpierrez*, 121 F.3d 781, 788 (1st Cir. 1997)). Fraudulent intent may be inferred by examining the Debtor's conduct to determine if he presented the Plaintiff with "'a picture of deceptive conduct . . . indicat[ing] an intent to deceive.'" *Copeland*, 291 B.R. at 766 (quoting *Wolf v. McGuire (In re McGuire)*, 284 B.R. 481, 492 (Bankr. D. Colo. 2002)).

Finally, § 523(a)(2)(A) also requires justifiable reliance by the Plaintiff; i.e., it must prove that it actually relied on the Debtor's representations and that, based upon the facts and circumstances known at the time, such reliance was justifiable. *Copeland*, 291 B.R. at 767. Justifiable reliance can be found even if the Plaintiff "'might have ascertained the falsity of the representation had [it] made an investigation.'" *Copeland*, 291 B.R. at 767 (quoting *McCoy*, 269 B.R. at 198).

The Plaintiff argues that the issues required for nondischargeability under § 523(a)(2)(A) have already been determined through the Judgment, and accordingly, collateral estoppel preludes re-litigation of the issues of misrepresentation, fraud, and justifiable reliance. Pursuant to the Full Faith and Credit Statute, "judicial proceedings . . . [of any State] shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . ." 28 U.S.C.A. § 1738 (2004). Accordingly, "a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 104 S. Ct. 892, 896 (1984); *see also Bay Area Factors v. Calvert (In re Calvert)*, 105 F.3d 315, 317-18 (6th Cir. 1997).

The doctrine of collateral estoppel, also known as issue preclusion, prevents parties from re-litigating issues that have already been resolved by another court. *Du Page Forklift Serv., Inc. v. Material Handling Servs., Inc.*, 744 N.E.2d 845, 849 (Ill. 2001).

> The doctrine of collateral estoppel applies when a party . . . participates in two separate and consecutive cases arising on different causes of action and some

Main Document Page 9 of 13

> controlling fact or question material to the determination of both causes has been adjudicated against that party in the former suit by a court of competent jurisdiction. The adjudication of the fact or question in the first cause will, if properly presented, be conclusive of the same question in the later suit, but the judgment in the first suit operates as an estoppel only as to the point or question actually litigated and determined and not as to other matters which *might* have been litigated and determined.

*Nowak v. St. Rita High Sch.*, 757 N.E.2d 471, 477 (Ill. 2001). Accordingly, "[c]ollateral estoppel applies in bankruptcy dischargeability proceedings, but the bankruptcy court retains exclusive jurisdiction to determine whether a debt is dischargeable." *Caton v. Trudeau (In re Caton)*, 157 F.3d 1026, 1028 (5th Cir. 1998). As the party seeking to invoke collateral estoppel, the Plaintiff bears the burden of proving that it applies. *Herbstein v. Bruetman (In re Bruetman)*, 259 B.R. 649, 660 (Bankr. N.D. Ill. 2001). Furthermore, "[t]he effect of a judgment in subsequent litigation is determined by the law of the jurisdiction that rendered the judgment." *In re Catt*, 368 F.3d 789, 790-91 (7th Cir. 2004). In this case, Illinois law governs.

"Under Illinois law, the essential elements for application of collateral estoppel are: (1) the issue decided in the prior adjudication must be identical to the issue in the current action; (2) the party against whom the estoppel is asserted must have been a party or in privity with a party to the prior case; and (3) there must have been a final judgment on the merits in the prior action." *In re Kelly*, ___ B.R. ___, No. 04 B 46862, 2006 Bankr. LEXIS 2276, at *31, 2006 WL 2690983, at *11 (Bankr. N.D. Ill. Sept. 20, 2006). Further, "[e]ven where the threshold elements of the doctrine are satisfied, collateral estoppel must not be applied to preclude parties from presenting their claims or defenses unless it is clear that no unfairness results to the party being estopped." *Nowak*, 757 N.E.2d at 478.

9

Here, there is no dispute that the parties are the same as in the State Court Lawsuit. Furthermore, the Judgment is a final judgment, and the Complaint raises issues identical to those raised in the Plaintiff's nondischargeability action. Therefore, the only question before the court is whether these issues were actually litigated by the parties.

> [C]ollateral estoppel will not be applied unless it appears that the party against whom it is asserted had a full and fair opportunity to litigate the issue in the prior proceeding and that the application of the doctrine will not result in a[n] injustice to that party. The "full and fair opportunity" requirement is satisfied even if only a slight amount of evidence was presented on the disputed matter decided in the first suit. Further, "actually litigated" does not mean thoroughly litigated, but only that the parties disputed the issue and the trier of fact resolved it. Collateral estoppel generally will apply as long as the party had a procedural, substantive, and evidentiary opportunity to be heard on the issue.

*Taylor v. Peoples Gas Light & Coke Co.*, 656 N.E.2d 134, 141 (Ill. App. Ct. 1995) (internal citations omitted).

> In deciding whether the doctrine of collateral estoppel is applicable in a particular situation, a court must balance the need to limit litigation against the right of a fair adversary proceeding in which a party may fully present his case. In determining whether a party has had a full and fair opportunity to litigate an issue in a prior action, those elements which comprise the "practical realities of litigation" must be examined. In some circumstances, the absence of an incentive to vigorously litigate in the former proceeding is relevant in the application of collateral estoppel. There must have been the incentive and opportunity to litigate, so that a failure to litigate the issue is in fact a concession on that issue.

*Talarico v. Dunlap*, 685 N.E.2d 325, 328 (Ill. 1997) (internal citations omitted). Because an action must actually be litigated, default judgments generally do not enjoy the preclusive effects of collateral estoppel. *Clear Channel Outdoor, Inc. v. Nikitas (In re Nikitas)*, 326 B.R. 127, 133 (Bankr. N.D. Ill. 2005); *S & S Auto. v. Checker Taxi Co.*, 520 N.E.2d 929, 931-32 (Ill. Ct. App. 1988).

Here, the Judgment is not an ordinary default judgment wherein a defendant is served with process and never makes any appearance in the case, so the analysis must go further. The Debtor did not file an answer, but his attorney filed a notice of appearance on April 4, 2005. The Debtor's attorney then appeared in court on the Debtor's behalf on at least two separate occasions and received two extensions of time to file an answer. He again appeared at the status hearing held on August 17, 2005, and the following exchange took place:

> MR. MEYER: Judge, my client, on behalf of ATM Construction, it's actually ATM Concrete Construction, Inc., would agree to a judgment in the amount of 17 thousand, I have that number somewhere. 17 thousand, oh, $18,969.21. And we would also agree in that count to attorney's fees of $1,358.
>
> With regard to Mr. Meador individually, he, I would object to the entry of a fraudulent, an order finding him having committed fraud.
>
> THE COURT: The problem I have now is that more than 30 days has passed, and there's been no answer, so essentially that's an admission, so I think at this point I have, I must, under the law, enter judgment on both counts for the Plaintiff and against the Defendant. I'll enter judgment in the amount of $18,969.21 and attorney's fees in the amount of $1,358.

MINNIS AFF. EX. B at 4. The Judgment subsequently entered on June 15, 2006, states, in material part as follows:

> THIS MATTER coming before the Court for status on the Plaintiff's Two-Count Complaint filed on February 2, 2005, and Plaintiff being present with Attorney Rachel Minnis, Defendants being present by Attorney Thomas Meyer, and the Court's finding that the Defendant has never filed an Answer or responsive pleading to the Complaint and the Defendants stipulating to the same, therefore, the Court finds that the facts as alleged in the Complaint shall be taken as true and the Court grants the entry of Judgment on both counts over the objection of the Defendant.

MINNIS AFF. EX. C.

Nevertheless, while the Judgment is clearly valid and final, it is also based entirely upon the Debtor's failure to defend the lawsuit. No evidence was offered into the record in the State Court Lawsuit to support the Plaintiff's allegations contained in the Complaint, nor was a trial date ever set. The Illinois court made a finding from the bench at the parties' status hearing that the Plaintiff was entitled to a judgment based upon the Debtor's failure to respond, but there is nothing in the record on the Motion for Summary Judgment to indicate that the Debtor was given any sort of notice that a default judgment could be entered against him from the bench at that status hearing. Furthermore, the Judgment itself states that it is based entirely upon the Debtor's failure to answer or respond rather than upon any evidence presented. It is clear that the full and fair opportunity to litigate requires more than the pendency of a lawsuit under Illinois law, and a judgment based entirely upon a defendant's failure to answer cannot be given preclusive effect under the doctrine of collateral estoppel.[1] The Debtor did not have "a procedural, substantive, and evidentiary opportunity to be heard on the [fraud] issue." *See Taylor*, 656 N.E.2d at 141.

In summary, based upon the foregoing analysis, collateral estoppel does not apply, and therefore, genuine issues of material fact exist on the § 523(a)(2)(A) nondischargeability issue. Accordingly, the Defendant's Motion for Summary Judgment will be denied.

---

[1] Consent judgments are generally entitled to preclusive effect when the actual parties thereto attempt to later use them for that purpose. *Arnett v. Envtl. Sci. & Eng'g, Inc.*, 657 N.E.2d 668, 673 (Ill. Ct. App. 1995). Here, the Judgment is not consensual with respect to the Debtor, individually, and the fraud issues.

An order consistent with this Memorandum will be entered.

FILED: October 4, 2006

                                      BY THE COURT

                                      */s/  RICHARD STAIR, JR.*

                                      RICHARD STAIR, JR.
                                      UNITED STATES BANKRUPTCY JUDGE